**Clifford S. Davidson, OSB No. 125378**
cdavidson@sussmanshank.com
**Kristen G. Hilton, OSB No. 151950**
khilton@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
Attorneys for Plaintiff Brian Addison

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON
(Pendleton Division)

| | |
|---|---|
| **BRIAN ADDISON**, an individual, | Case No. 2:15-cv-2041-SI |
| Plaintiff, | Plaintiff Brian Addison's |
| v. | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **CITY OF BAKER CITY**, a municipal corporation**,** Police Chief **WYN LOHNER**, in his official and individual capacities, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | *Declarations of Kristen G. Hilton, Clifford S. Davidson (public and sealed), and Brian Addison filed herewith* |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION; FACTS NOT ALREADY PRESENTED TO THE COURT............ 1

II.   DISPUTED FACTS .................................................................................. 1

    A.    What Occurred When Addison Was Fired From The Record-Courier In 2008 And When Officer Newman Stopped Addison In 2014. ......................................... 1

    B.    What Lohner Said to New Directions About Addison, And Whether His Statements And The Fact File Played A Role In Addison's Termination ........ 2

    C.    Who Provided The Records To New Directions ......................................... 4

    D.    Lohner Was, And Still Is Deeply Offended By Addison's Editorial And His Stated Concerns For Community Safety Were Pretextual ................................ 4

    E.    Policies Governing Lohner ......................................................................... 5

III.  SUMMARY JUDGMENT BURDENS ................................................... 5

IV.   THE FIRST AMENDMENT RETALIATION CLAIM SHOULD GO TO THE JURY ................................................................... 6

    A.    Genuine Issues Of Material Fact Preclude Summary Judgment On The Merits ... 6

    Factor 1:  Addison engaged in constitutionally protected activity. .......................... 7

    Factor 2:  ". . . subjected to adverse action by the defendant . . ." ........................... 7

    Factor 2:   ". . . that would chill a person of ordinary firmness from ........................ 10

    continuing to engage in the activity." ...................................................... 10

    Factor 3:  There was a substantial causal relationship between the  .................... 10

    constitutionally protected activity and the adverse action....................... 10

        (1)    Temporal proximity of retaliation and protected conduct ........................... 10

        (2)    Expressed opposition to the speech ......................................................... 11

        (3)    Facts to demonstrate that the explanations were pretextual...................... 11

    B.    Lohner Has Not Shown That He Is Entitled To Qualified Immunity With Respect To The First Amendment Retaliation Claim ................................................. 14

    C.    Issues of Fact Preclude Summary Judgment on Supervisory Liability For First Amendment Retaliation ............................................................................ 15

    D.    Defendants Fail To Meet Their Burden For Summary Judgment On Municipal Liability For First Amendment Retaliation ................................................... 18

V.    THE INTERFERENCE WITH EMPLOYMENT CLAIM SHOULD GO TO THE JURY ...................................................................................................18

VI.   THE DEFAMATION CLAIM SHOULD GO TO THE JURY ................................. 23

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

VII.    LOHNER IS NOT ENTITLED TO ABSOLUTE IMMUNITY ON THE COMMON LAW CLAIMS ................................................................................................ 26

    A.    Issues Of Fact, Concerning Whether Lohner Was Required Or Authorized To Contact New Directions Concerning Addison, Preclude Summary Judgment .... 27

    B.    Oregon Tort Claims Act Immunity Does Not Apply Because Lohner Did Not Exercise "Discretion" Within The Meaning Of That Statute ................................ 31

    C.    Lohner Has Not Satisfied His Burden Of Showing That Public Policy Requires Absolute Immunity ................................................................................................ 34

VIII.    THE DUE PROCESS CLAIMS SHOULD GO TO THE JURY ........................... 35

    A.    Procedural Due Process:  Addison Has Made A Prima Facie Showing Of A Property Interest In Employment With New Directions For The Remainder Of His "30-Day Work Plan" ....................................................................................... 35

    B.    Procedural Due Process:  Defendants Are Responsible For The Deprivation Of Addison's Property Right In Anticipated Further Employment ................................................................................................... 37

    C.    Substantive Due Process:  Addison Has Made A Prima Facie Showing Of A Liberty Interest In Not Being Stigmatized Or Blacklisted In His Occupation By Government Officials ........................................................................... 40

    1.    Addison Has Demonstrated A Liberty Interest Sufficient To Survive Summary Judgment .................................................................................................... 41

    D.    Lohner Is Not Entitled To Qualified Immunity On The Due Process Claims ..................................................................................................................43

    E.    Lohner Is Not Entitled To Qualified Immunity On Addison's  Request For An Injunction Preventing Lohner From Calling Addison's Prospective Employers…… ........................................................................................ 44

IX.    THE BULK OF DEFENDANTS' PURPORTED EVIDENCE IS INADMISSIBLE, AND SOME OF IT WAS NOT PRODUCED IN DISCOVERY............................. 44

    A.    Lohner's Deposition Testimony ............................................................. 45

    B.    Defendants Failed to Disclose Exhibit 113 and Have Not Authenticated It ..................................................................................................................46

    C.    The Court Should Exclude Other Statements in Lohner's Declaration ... 47

X.    CONCLUSION ................................................................................................... 50

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

## **TABLE OF AUTHORITIES**

**CASES**

*Ambat v. City & Cnty. of San Francisco*,
  757 F.3d 1017 (9th Cir. 2014) ..................................................................... 5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................... 5

*Aranda v. City of McMinnville*,
  942 F. Supp. 2d 1096 (D. Or. 2013) ......................................................... 18

*Austin v. Univ. of Or.*,
  No. 6:15-CV-02257-MC, 2016 U.S. Dist. LEXIS 121198 (D. Or. Sep. 8, 2016) ......... 32

*Bennett v. Farmers Ins. Co.*,
  332 Ore. 138 (2001) ................................................................................. 37

*Beyene v. Coleman Sec. Services, Inc.*,
  854 F.2d 1179 (9th Cir. 1988) ................................................................... 47

*Blount v. Conn. Gen. Life Ins. Co.*,
  No. CV 01-1341-BR, 2002 U.S. Dist. LEXIS 25553 (D. Or. July 2, 2002) ................. 46

*Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981) .. 42

*Borough of Duryea v. Guarnieri*,
  564 U.S. 379 (2011) ................................................................................. 23

*Brew v. City of Emeryville*,
  138 F. Supp. 2d 1217 (N.D. Cal. 2001) ..................................................... 47

*Brunette v. Humane Soc'y*,
  294 F.3d 1205 (9th Cir. 2002) ..................................................................... 9

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*Buckles v. King Cty.*,

    191 F.3d 1127 (9th Cir. 1999) ................................................................. 27

*Butler v. San Diego Dist. Attorney's Office*,

    370 F.3d 956 (9th Cir. 2004) .................................................................. 27

*Butz v. Economou*,

    438 U.S. 478 (1978) ............................................................................... 27

*Chao v. Westside Drywall, Inc.*,

    709 F. Supp. 2d 1037 (D. Or. 2010) ...................................................... 45

*Chesterman v. Barmon*,

    305 Ore. 439 (1988) ............................................................................... 22

*Conn v. Gabbert*,

    526 U.S. 286 (1999) ............................................................................... 40

*Cooper v. PGE*,

    110 Ore. App. 581 (1992) ....................................................................... 23

*Coszalter v. City of Salem*,

    320 F.3d 968 (9th Cir. 2003) ........................................................... passim

*DiMartini v. Ferrin*,

    889 F.2d 922 (9th Cir. 1989) .................................................................. 43

*Draper v. Astoria Sch. Dist. No. 1C*,

    995 F. Supp. 1122 (D. Or. 1998) ........................................................... 23

*Dun & Bradstreet v. Greenmoss Builders*,

    472 U.S. 749 (1985) ............................................................................... 23

*Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*,

    627 F.3d 376 (9th Cir. 2010) .................................................................... 5

*Edwards v. Multnomah Cnty.*,

    No. 3:14-cv-531-AC, 2016 U.S. Dist. LEXIS 86391 (D. Or. May 19, 2016) .............. 10

Page iv – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MSJ

*Ellins v. City of Sierra Madre*,

    710 F.3d 1049 (9th Cir. 2013) ................................................................ 14

*Eng v. Cooley*,

    552 F.3d 1062 (9th Cir. 2009) ................................................................. 7

*Federal Deposit Ins. Corp. v. Henderson*,

    940 F.2d 465 (9th Cir. 1991) ........................................................... 37, 43

*Ford v. City of Yakima*,

    706 F.3d 1188 (9th Cir. 2013) ..................................................... 7, 14, 15

*Friedman v. Live Nation Merch., Inc.*,

    833 F.3d 1180 (9th Cir. 2016) .................................................................. 5

*Garcetti v. Ceballos*,

    547 U.S. 410 (2006) .............................................................................. 28

*Greene v. McElroy*,

    360 U.S. 474 (1959) .............................................................................. 35

*Greisen v. Hanken,*

    No. 3:14-cv-01399-SI, 2015 U.S. Dist. LEXIS 35749 (D. Or. Mar. 23, 2015) ............. 22

*Handy v. Lane Cnty.*,

    No. 6:12-cv-01548-AA, 2017 U.S. Dist. LEXIS 1954 (D. Or. Jan. 2, 2017) .................. 7

*Hayes v. Bolen*,

    594 F. App'x 420 (9th Cir. 2015) (unpublished memo.) ............................................. 44

*Heidt v. City of McMinnville*,

    No. 3:15-cv-0989-SI, 2015 U.S. Dist. LEXIS 172361 (D. Or. Dec. 29, 2015) ..... passim

*Jacobson v. Schwarzenegger*,

    650 F. Supp. 2d 1032 (C.D. Cal. 2009) .................................................. 45

*Johnson v. Duffy*,

    588 F.2d 740 (9th Cir. 1978) ................................................................. 15

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*Jones v. Cate*,

   No. 2:12-cv-2181 TLN CKD, 2016 U.S. Dist. LEXIS 8463 (E.D. Cal. Jan. 22, 2016) 15

*L & D of Ore., Inc. v. Am. States Ins. Co.*,

   171 Ore. App. 17 (2000) .......................................................................... 25

*Lacey v. Maricopa County*,

   693 F.3d 896 (9th Cir. 2012) .................................................................... 27

*Las Vegas Sands, LLC v. Nehme,*

   632 F.3d 526 (9th Cir. 2011) ...................................................................... 6

*Latter-Singh v. Holder*,

   668 F.3d 1159 (9th Cir. 2012) .................................................................. 42

*Lewis v. Oregon Beauty Supply Co.*,

   302 Ore. 616 (1986) .......................................................................... 19, 20

*Lowrimore v. Dimmitt*,

   310 Ore. 291 (1990) .......................................................................... 32, 34

*Martinez v. Oregon*,

   No. 6:10-cv-06007-AA, 2012 U.S. Dist. LEXIS 121186 (D. Or. Aug. 27, 2012) ......... 34

*McBride v. Magnuson*,

   282 Ore. 433 (1978) .......................................................................... 32, 33

*Mendocino Envt'l Cntr.*,

   192 F.ed 1283 (9th Cir. 1999) .................................................................. 10

*Merritt v. Mackey*,

   827 F.2d 1368 (9th Cir. 1987) ............................................................passim

*Monico v. City of Cornelius*,

   No. 03:13-cv-02129-HZ, 2015 U.S. Dist. LEXIS 44634 (D. Or. Apr. 6, 2015) ...... 14, 29

*Mulligan v. Nichols*,

   835 F.3d 983 (9th Cir. 2016) .............................................................. 6, 8, 9

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*Nelson v. City of Davis*,

　571 F.3d 924 (9th Cir. 2009)................................................................ 6, 25

*Neumann v. Liles*,

　358 Ore. 706 (2016) ...........................................................................24, 25

*O'Brien v. Welty*,

　818 F.3d 920 (9th Cir. 2016)................................................................ 6, 10

*Redman v. County of San Diego*,

　942 F.2d 1435 (9th Cir. 1991)................................................................. 15

*Redwind v. W. Union, LLC*,

　No. 3:14-cv-01699-AC, 2016 U.S. Dist. LEXIS 57793 (D. Or. May 2, 2016) ............ 46

*Roth v. Veteran's Admin. of United States*,

　856 F.2d 1401 (9th Cir. 1988)............................................................ 40, 42

*Schulz v. Visionary Props.*,

　No. 3:14-cv-01129-AC, 2015 U.S. Dist. LEXIS 160756 (D. Or. Dec. 1, 2015)........... 48

*Shanks v. Dressel*,

　540 F.3d 1082 (9th Cir. 2008)........................................................... 35, 37

*Shearer v. Lambert*,

　274 Ore. 449 (1976) ............................................................................. 27

*Sizemore v. City of Madras*,

　No. 02-74-KI, 2005 U.S. Dist. LEXIS 49622 (D. Or. Feb. 2, 2005) ..................... 29, 30

*Stretten v. Wadsworth Veteran's Hospital*,

　537 F.2d 361 (9th Cir. 1976)................................................................. 40

*Tolan v. Cotton*,

　134 S. Ct. 1861 (2014) ......................................................................... 6

*Turner v. State*,

　359 Ore. 644 (2016) ....................................................................... 32, 33

Page vii – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MSJ

*United States v. Dibble*,

    429 F.2d 598 (9th Cir. 1970)...................................................................... 49

*Vanelli v. Reynolds Shool Dist. No. 7*,

    667 F.2d 773 (9th Cir. 1982)...................................................................... 40

*Wellington v. Lane Cty.*,

    460 F. App'x 690 (9th Cir. 2011) (unpub. memorandum) ........................... 41

*Westfall v. Erwin*,

    484 U.S. 292 (1988) ................................................................................. 27

*Westfall v. State*,

    355 Or. 144 (2014) ............................................................................. 27, 32

## STATUTES

ORS § 30.265(6)(c) ........................................................................................ 31

## OTHER AUTHORITIES

Enforcement Guidance No. 915.002 (Apr. 25, 2012): Consideration of Arrest and

    Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of

    1964.......................................................................................................... 31

Ore. UCJI 57.02 (2005 rev. with 2006-2016 supps.) ...................................... 19

Ore. UCJI 57.03 (2005 rev. with 2006-2016 supps.) ...................................... 19

U.S. Const. amend. I ....................................................................................... 7

## RULES

Fed. R. Civ. P. 26(a)(1)(A)(ii) ......................................................................... 46

Fed. R. Civ. P. 32 .......................................................................................... 45

Fed. R. Civ. P. 56(a)....................................................................................... 5

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Fed. R. Civ. P. 56(c)(4) ............................................................ 44

Fed. R. Civ. P. Rule 37(c)(1) .................................................... 46

FRE 602 ........................................................................ 48, 49, 50

FRE 801(c) .............................................................................. 45

FRE 901(b)(1) ......................................................................... 49

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

## I.    INTRODUCTION; FACTS NOT ALREADY PRESENTED TO THE COURT

On their motion for summary judgment, Defendants bore the burden of showing this Court, through competent evidence, that there are no issues of fact suitable for jury determination.  Rather than do so, Defendants have offered bare proclamations such as: Chief Lohner was on duty and in his uniform when he called New Directions, therefore he acted within the scope of his duties when he defamed the plaintiff; choosing to call Plaintiff's employers is a discretionary act entitling the Chief to absolute immunity because, well, the Chief chose to do it; because he is the Chief of Police, Lohner is entitled to interfere with the employment of Baker City residents if he feels it promotes safety.

In short, Defendants' response reflects the we-don't-need-to-explain-ourselves attitude that landed them in this situation in the first place.  Numerous questions of fact, and inconsistencies in the evidence, preclude summary judgment and should go to the jury.[1]

## II.    DISPUTED FACTS[2]

## A.    What Occurred When Addison Was Fired From The Record-Courier In 2008 And When Officer Newman Stopped Addison In 2014.

Addison admits that he had an argument with Greg Brinton at the time he was terminated from the *Record-Courier* and admits that he ripped up a book Debbie Schoeningh gave him. (Ex. AA, Addison Dep. 45:13-46:7[3]; Concurrently-filed Declaration of Brian Addison ("Addison Decl."), ¶ 7.) However, Addison did not: bang on windows (Ex. AA, Addison Dep. at 43:16-44:11); slam the newspaper's camera on the table or break

---

[1] Defendants' motion on statute of limitations grounds fails for all of the reasons stated in Plaintiff's Motion for Partial Summary Judgment.

[2] Addison incorporates by reference the facts described in, and evidence submitted with, Plaintiff's Motion for Partial Summary Judgment filed on March 3, 2017, and sets forth additional relevant facts herein. (*See* ECF No. 51.)

[3] Exhibits AA through NN are attached to the concurrently-filed Declaration of Kristen G. Hilton. Exhibits OO through QQ are attached to the concurrently filed Declaration of Clifford S. Davidson.

Page 1 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

the lens (Ex. AA, Addison Dep. at 41:12-42:11); or yell at employees at Brinton's office (Ex. AA, Addison Dep. at 44:12-22).

At the June 10 hearing on the stalking citation that Brinton signed, Brinton testified that he did not feel threatened by Addison. (Addison Decl., ¶¶ 4-5.) The hearing was continued to June 13 because Schoeningh did not appear in court on the 10th. (Addison Decl., ¶ 5.) On June 13, Schoeningh stated in open court that she had nothing to add to Mr. Brinton's testimony, and the court dismissed the stalking citation.  (Addison Decl., ¶¶ 6-7.)   Although he was terminated by the *Record-Courier*, Addison, included the newspaper on his résumé. (Ex. FF; Ex. BB, Hendricks Dep. at 36:9-12.)

With respect to the June 1, 2014 traffic stop by Officer Newman, Addison testified that he did not lose his temper with Officer Newman or yell at Newman during that stop. (Ex. C, Addison Dep. at 85:7-18.)[4]

**B.**     **What Lohner Said to New Directions About Addison, And Whether His Statements And The Fact File Played A Role In Addison's Termination**

On November 3, 2017, Addison was interviewed by a *Baker City Herald* reporter for what would become the Article.[5] (Ex. GG.) There had been some confusion concerning whether Addison was authorized to provide information in connection with the Article, but New Directions did not terminate Addison or fill out any termination paperwork the week of November 3, 2014. (Ex. B, Hendricks Dep. at 21:14-22:23; Ex. CC, Selander Dep. at 47:20-48:2, 54:14-57:14, 66:10-67:24.) On November 12, 2017, two days after publication of the Article, New Directions presented Addison with a 30-Day Work Plan. (Ex. CC, Selander Dep. at 11:2-9; Ex. DD, Deputy Dep. at 27:24-32:1; Ex. HH)  When he

---

[4] Exhibits A through W are attached to the Declaration of Kristen G. Hilton. (*See* ECF No. 52.)  Exhibits X through Z are attached to the Declaration of Clifford S. Davidson. (*See* ECF No. 53.)

[5] All terms not defined herein have the same definition as in Plaintiff's Motion for Partial Summary Judgment.

Page 2 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

was presented the 30-Day Work Plan, he was told that his employment would continue for a 30-day period so long as he complied with the terms of the 30-Day Work Plan. (Addison Decl., ¶¶ 2-3.) The 30-Day Work Plan stated: "We will meet each week during our regular scheduled supervision time, which is Mondays at 3:00 pm, to review your compliance with this work plan." (Ex. HH at 2.) Addison's direct supervisor testified that she did not remember Addison doing anything between November 12 and November 14 to violate the Work Plan. (Ex. DD, Deputy Dep. at 31:7-20.)

In the morning and afternoon of November 13, Marji Lind of New Directions spoke to Lohner. Lohner admits that he told Lind that Addison had "mood swings," including in relation to an issue with Addison's former employer, and expressed concern over Addison working with "vulnerable populations." (Ex. X, Lohner Dep. at 130:2-131:17, 134:22-135:16), but Lind testified that Addison's name never even came up during the phone conversation. (ECF No. 50, Ex. 117, Lind Dep. at 13:13-14:13.). Lind also testified that following the discussion with Lohner, she contacted Hendricks, and said "Hey, I just received a suggestion to update our policy and procedure and the process we use for background checks" and that the two discussed getting records on local hires and the budgets associated with that. (Ex. EE, Lind Dep. at 16:3-17:6, 17:17-18:8.) Hendricks testified that there was no discussion at that time about obtaining reports about other New Directions employees, or about changing overall policies and procedures. (Ex. BB, Hendricks Dep. at 11:12-15; 13:4-8.) Rather, the discussion she had with Lind and Selander immediately after Lohner's phone conversation with Lind was to obtain "a report about Mr. Addison" because "[t]here might be something of a concern." (Ex. BB, Hendricks Dep. at 10:9-11:8.) Hendricks obtained the fact file and incident report on the morning of November 14 and she and Selander looked at the records and discussed them before preparing the termination paperwork. (Ex. B, Hendricks Dep. at 21:14-22:23; Ex. Q.) Addison was terminated a few hours later. (Ex. P.)

Page 3 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

**C.      Who Provided The Records To New Directions**

As set forth in Plaintiff's Motion for Partial Summary Judgment, there is evidence in the record that indicates the fact file and incident report provided to New Directions came from the Baker City Police Department, not the BCCD. (Pltf. Mot. at 6-7; Ex. B, Hendricks Dep. at 21:23-22:1, 39:4-24; Ex. F, Sackos Dep. at 14:14-23, 35:17-37:7, 45:9-47:18, 52:9-24; Ex. L, p. 3; Ex. Q; Ex. R; Ex. Y, Taylor Dep. at 56:24-59:15.)

**D.      Lohner Was, And Still Is Deeply Offended By Addison's Editorial And His Stated Concerns For Community Safety Were Pretextual**

Lohner met with Addison and Schoeningh the day after the Editorial was published to demand its retraction and question the integrity of the paper. (Ex. X, Lohner Dep. at 71:7-15; Ex. OO, Lohner Dep. at 74:22-77:2, 82:15-83:18; Ex. C, Addison Dep. at 26:10-28:24.) Lohner was upset about "that accusation piece specifically the Fourth Amendment and specifically right after we just started a canine program.  I didn't want the community to think that we were out there violating people's rights with this new tool, as Brian referred to it." (Ex. OO, Lohner Dep. at 82:23-83:4.) Lohner's testimony reveals that he is still deeply offended by Addison's Editorial. (Ex. OO, Lohner Dep. at 74:22-78:11; 82:15-86:20.)

Lohner flagged Addison "caution" in 2008, purportedly out of concern for Debbie Schoeningh's safety. (Ex. X, Lohner Dep. 19:14-20:3.) A caution, which flashes "red" on the dispatch screen, means there is something that officers need to know about a person or location. (Ex. KK, Sackos Dep. at 38:11-39:4, 40:15-16.)  According to Mike Kee, the City's 30(b)(6) designee and a former police chief, in his experience flagging would be used if someone "was a threat, that could hurt a police officer who didn't know the history of the person." (Ex. LL, Kee Dep. at 103:11-104:11.) However, at his deposition, Ron Taylor (with the permission of the director of BCCD) reviewed the records of other persons known to be violent toward police officers and determined that those individuals were not

Page 4 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

"flagged as caution."  (Ex. PP, Taylor Dep. at 45:22-51:25, 67:23-68:13; Second Davidson Decl. (Sealed) Exs. RR, SS, TT, UU; Ex. MM.)

E.    **Policies Governing Lohner**

Kee testified that beyond the City Charter and the oath of office, there is "no other policy that either gives him [the Police Chief] authority or, you know, controls the authority, aside from the laws." (Ex. LL, Kee Dep. at 50:22-52:10) He testified that the Position Description, marked as Exhibit 13 at Kee's deposition, "looks more like a memo for a vacancy.  It outlines the essential job functions.  However, it's not a Position Description." (Ex. LL, Kee Dep. at 32:20-33:16.)

## III.    SUMMARY JUDGMENT BURDENS

Defendants move for summary judgment on the merits of all claims. Defendants bear the "heavy burden" of demonstrating the absence of any triable issue of material fact. *Ambat v. City & Cnty. of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014); Fed. R. Civ. P. 56(a). "A moving party without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (quotation marks omitted). Here, with respect to the merits, Defendants must either negate an essential element of Addison's claims, or show that Addison does not have enough evidence of an essential element in order to carry his burden of persuasion at trial. *Id.*

Addison's claims survive if, through mustering evidence, he shows that there is a genuine issue of material fact for trial. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010). A material issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All inferences must be drawn in Addison's

Page 5 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).  Moreover, where, as here, parties file cross-motions for summary judgment, the Court "must consider each party's evidence, regardless [of] under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme,* 632 F.3d 526, 532 (9th Cir. 2011) (citation omitted).  Addison may introduce the testimony of third parties in order to show inconsistencies with Lohner's testimony and demonstrate general issues of material fact.  *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009) (vacating award of summary judgment in § 1983 action against police officers).

## IV.    THE FIRST AMENDMENT RETALIATION CLAIM SHOULD GO TO THE JURY

### A.    Genuine Issues Of Material Fact Preclude Summary Judgment On The Merits

To prevail on his claim of First Amendment Retaliation, Addison must prove:

> "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action."

*Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir 2010)).[6]  At a minimum, genuine issues of material fact

---

[6] In a case decided only a few months before *Mulligan*, the Ninth Circuit articulated this test as: "(1) [s]he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).  It is unclear why the Ninth Circuit applied different tests in these cases.  The *Mulligan* standard was articulated more recently and arguably is more stringent, therefore Addison addresses

Page 6 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

concerning each element preclude summary judgment on the merits of Addison's First Amendment retaliation claim.

**Factor 1:     Addison engaged in constitutionally protected activity.**

Addison indisputably engaged in constitutionally protected activity when he wrote the Editorial. *See Ford v. City of Yakima*, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Defendants rightly do not claim otherwise.

Further, Addison indisputably engaged in constitutionally protected activity when he provided an interview to the *Baker City Herald*, which published the Article concerning Addison's work on behalf of New Directions.  *Eng v. Cooley*, 552 F.3d 1062, 1067-1070 (9th Cir. 2009), *cert. denied sub nom.*, *Cooley v. Eng*, 130 S. Ct. 1047 (2010) (First Amendment encompasses the right to give interviews). Defendants rightly do not claim otherwise.

Addison also indisputably engaged in constitutionally protected activity by speaking at City Council meetings, and meeting with local officials, in furtherance of his role at New Directions – as featured in the Article.  U.S. Const. amend. I; *Handy v. Lane Cnty.*, No. 6:12-cv-01548-AA, 2017 U.S. Dist. LEXIS 1954, at *12 (D. Or. Jan. 2, 2017). ("A vital component of the right to petition the government is the ability to communicate concerns to elected representatives.").  Defendants rightly do not claim otherwise.

**Factor 2:     ". . . subjected to adverse action by the defendant . . ."**

Lohner admits that he called Addison's employers and described to them the "Caution Flag" that Lohner had placed in Addison's dispatch records, and warned the employers of Addison's "mood swings."  (Ex. X, Lohner Dep. at 18:8-20:3, 106:6-110:21,

---

the elements of that test.

Page 7 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

123:2-125:13, 129:10-131:4, 132:10-133:2.)  Addison was fired from both employers that Lohner called.  (Ex. AA, Addison Dep. at 142:20-144:20.)  There thus is, at minimum, a genuine issue of material fact as to whether Addison was subjected to adverse action by Lohner.

Adverse action typically involves the loss of a valuable governmental benefit or privilege. Defendants rely heavily on *Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016).  In *Mulligan*, the plaintiff was injured during an arrest by the LAPD and filed an administrative grievance. The police union responded to the grievance on behalf of the arresting officers. Because the plaintiff was a prominent executive, his ordeal attracted media attention. In the course of the media attention, the union stated that the plaintiff had a history of abusing bath salts, he was high when arrested and force was needed in order to subdue him. He was fired from his position with Deutsche Bank in light of the press release and media coverage. *Id.* at 986-87. The Ninth Circuit held that "the accusations and media leaks by the [police union] and its leadership are not enough to demonstrate a constitutional violation," because they did not affect the plaintiff's rights, benefits, relationship or status with the state, or constitute the loss of a valuable governmental benefit or privilege. *Id.* at 989. The court further stated that the reputational harm plaintiff undoubtedly suffered, which eventually resulted in the loss of his job, "is not actionable under § 1983 unless it is accompanied by some more tangible interests." *Id.*

*Mulligan* does not, as Defendants suggest, bar Addison's claim. The court in *Mulligan* cited *Coszalter v. City of Salem*, 320 F.3d 968, 975-76 (9th Cir. 2003), and clarified: Ninth Circuit law does not "stand for the proposition that speech by government officials can *never* give rise to a claim of First Amendment retaliation in the absence of a loss of tangible rights or government benefits." *Mulligan*, 835 F.3d at 989 n5. In *Coszalter*, the Ninth Circuit disclaimed any "exclusive, category-based limitation on the kind of retaliatory action that is actionable under the First Amendment," and noted that the

Page 8 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

"adverse action" requirement announced in prior cases does not mean "that the government is allowed to take severe retaliatory actions . . . because those actions do not result in the loss of a valuable governmental benefit or privilege." *Coszalter*, 320 F.3d at 975-76.

This is not a case, such as *Mulligan*, in which the police have spoken out publicly to defend themselves against a grievance and incidentally caused the plaintiff to lose his job. Rather, in this case, the Chief of Police privately contacted Addison's employers after learning that he worked for them and used his position to damage Addison in his professional life. This is precisely the type of "severe retaliatory action" that the *Coszalter* court contemplated.

Further, there is a genuine issue of fact concerning whether Addison has been deprived of a valuable governmental benefit or privilege. Defendants repeatedly emphasize that New Directions is the contracted mental health provider for Baker County (Def. Mot. at 6; Lohner Decl. at 2), and go so far as to assert that Lohner's communications with New Directions comprised petitioning of government within the meaning of the First Amendment and the *Noerr-Pennington* doctrine. (Ans. to SAC at 11 ¶ 29.) Lohner testified that New Directions is "a partner that we work with quite frequently on some of our, not only vulnerable, but potentially dangerous people that we deal with through mental health." (Ex. OO, Lohner Dep. at 127:5-8.) This evidence precludes summary judgment because, crediting Lohner's testimony, there is an issue of fact regarding whether Addison's termination can be attributed to government actors. *Cf. Brunette v. Humane Soc'y*, 294 F.3d 1205, 1209-10 (9th Cir. 2002) (noting, in context of determining whether a private party could be charged with state action, that interrelatedness of state actors and private parties is "a highly factual question").

Page 9 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

**Factor 2:** **". . . that would chill a person of ordinary firmness from continuing to engage in the activity."**

The test for whether Defendants' actions would chill a person of ordinary firmness from engaging in protected First Amendment activities is "generic and objective." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). Whether Addison "himself was, or would have been, chilled is not the test." *Mendocino Envt'l Cntr.*, 192 F.3d 1283, 1300 (9th Cir. 1999). It is indisputable that the prospect of losing a job in a small city would chill the First Amendment activities of a person of ordinary firmness.

**Factor 3:** **There was a substantial causal relationship between the constitutionally protected activity and the adverse action.**

The Ninth Circuit has listed three types of circumstantial evidence that a plaintiff might present in order to demonstrate a genuine issue of material fact on the issue of retaliatory motive: (1) temporal proximity of the retaliation and the protected conduct; (2) expressed opposition to the speech, or (3) facts to demonstrate that the explanations were pretextual. *Coszalter*, 320 F.3d at 977; *see Edwards v. Multnomah Cnty.*, No. 3:14-cv-531-AC, 2016 U.S. Dist. LEXIS 86391, at *17 (D. Or. May 19, 2016), *adopted sub nom.*, *Edwards v. Staton*, 2016 U.S. Dist. LEXIS 85944 (D. Or. July 1, 2016) (Simon, J.).

**(1)** **Temporal proximity of retaliation and protected conduct**

Whether Lohner's acts were temporally proximate to Addison's protected conduct depends on which conduct is considered. Addison's protected conduct of speaking to the *Baker City Herald* occurred a matter of days before Lohner called New Directions. (Ex. X, Lohner Dep. at 114:2-11, 123:2-125:22; Ex. N.) While Lohner's calls to McQuisten and New Directions occurred several years after the Editorial was published, there is no *per se* rule of proximity. Indeed, the Ninth Circuit appears to have anticipated precisely the situation present here:

Page 10 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

"A rule that any period over a certain time is per se too long .
. . would be unrealistically simplistic.  Retaliation often follows
quickly upon the act that offended the retaliator, but this is not
always so.  For a variety of reasons, some retaliators prefer
to take their time: They may wait until the victim is especially
vulnerable or until an especially hurtful action becomes
possible.  Or they may wait until they think the lapse of time
disguises their true motivation."

*Coszalter*, 320 F.3d at 978.

### (2)    Expressed opposition to the speech

Lohner indisputably objected to the Editorial.  He visited the *Record-Courier* office
to meet with Addison and his editor the day after the Editorial was published to demand
its retraction and question the integrity of the paper. (Ex. X, Lohner Dep. at 71:7-15; Ex.
OO, Lohner Dep. at 74:22-77:2, 82:15-83:18; Ex. C, Addison Dep. at 26:10-28:24.)
Lohner's testimony reveals that he is still deeply offended by Addison's Editorial. (Ex. OO,
Lohner Dep. at 74:22-78:11; 82:15-86:20.)

### (3)    Facts to demonstrate that the explanations were pretextual

Addison has adduced evidence that Lohner's explanation – that his, and his
department's, conduct toward Addison reflected concern for "community safety" – was
pretextual. Addison has presented evidence that persons known to be violent toward
police officers were not "flag[ged] as caution," despite the fact that warning officers is a
key function of the caution flag. (Ex. KK Sackos Dep. at 38:11-39:4, 40:15-16; Ex. LL,
Kee Dep. at 103:11-104:11; Ex. MM; Ex. PP, Taylor Dep. at 45:22-51:25; Second
Davidson Decl. (Sealed), Exs. RR-UU.)  Addison had minimal contact with the Baker City
Police Department until the Editorial, at which point he was pulled over many times and

Page 11 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

only once issued a ticket (for expired tags). (Ex. C, Addison Dep. at 67:7-21, 69:4-75:1, 85:19-86:9, 88:6-89:23, 103:22-106:1 and 130:19-131:11; Ex. Q; Ex. W.) The Editorial criticized a key drug interdiction program as it was just getting started. (Ex. K; Ex. OO, Lohner Dep. at 82:15-86:20.) Lohner could not cite a single example of his calling an employer under circumstances similar to those in Addison's case. (Ex. X, Lohner Dep. at 133:24-135:16.) A rational fact-finder could infer that Lohner's treatment of Addison in a manner inconsistent with his treatment of others indicates retaliatory motive. *Coszalter*, 320 F.3d at 978. And, a pretextual explanation "casts doubt on other explanations that, standing alone, might appear to be true." *Id.*

Further, there is evidence from which a rational jury could infer that Lohner's statement to New Directions concerning Addison was different from what Lohner and Marji Lind described in their testimony. Evidence in the record indicates that New Directions, a facility specializing in mental health and addiction treatment, would not be dissuaded from continuing to employ someone simply because he has "mood swings," the term Lohner claims he used with New Directions in reference to Addison. Rather, the evidence demonstrates that New Directions encourages its employees <u>to remain employees</u> and participate in the New Directions Employee Assistance Program offered through its health insurer:

> "Employee issues, such as drug and alcohol abuse, emotional, marital and family problems, and financial and legal problems can be addressed through our Employee Assistance Program (EAP). The primary goal of EAP is to assist employers and employees in addressing work-related and non-work-related problems that impact our community.
>
> [¶] Employees needing EAP services can look on the Regents website and go to their member page and request

Page 12 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

> authorization.  This is provided with our current Health Plan
> with Regents. [¶] Contact the Human Resources Benefits
> Department for more details."

(Ex. II, p. 30; Ex. JJ.)

Another portion of the New Directions handbook demonstrates New Directions'
official commitment to employees experiencing "issues":

> "New Directions Northwest, Inc. recognizes the <u>importance of</u>
> <u>supporting</u> those employees that are in recovery themselves,
> and may desire to actively participate in community recovery
> support programs activities. It would be the preference of NDN
> that employees attend such support groups that are not
> attended by clients, for example: meetings for "professionals"
> or attend such meetings outside of the immediate community
> that we serve. However, it is also understood that this may not
> be a possibility."

(Ex. II, p. 30; Ex. JJ.) [emphasis added].) New Directions also provides for an investigative
process if an employee might be suspended.  (Ex. II., p. 15.)

Given New Directions' mission and its accommodation and support of employees,
a reasonable juror could conclude that the statements Lohner made, coupled with the
misleading version of the "fact file" and the Incident Report, concerned not "mood swings,"
but rather far more serious accusations. The only grounds for "immediate dismissal"
specifically mentioned in New Directions' handbook is "serious misconduct." (Ex. II, p.
20.) There is therefore at minimum an issue of fact concerning what, exactly, Lohner
actually told Marji Lind. Indeed, Lohner's and Lind's accounts of what they discussed on
the phone vary greatly and a reasonable juror could find that one or both witnesses are

Page 13 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

not telling the truth. For instance, Lind testified that Addison's name never even came up during the phone conversation. (ECF No. 50, Ex. 117, Lind Dep. at 13:13-14:13.)

From this disparity, a jury could infer that Lohner's explanation of his conduct is – and, to date, has been – pretextual with respect to his true motives for contacting New Directions.

**B.**    **Lohner Has Not Shown That He Is Entitled To Qualified Immunity With Respect To The First Amendment Retaliation Claim**

"Police officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (Feb. 8, 2013). This settles the issue. The relevant inquiry with respect to whether the law against First Amendment retaliation was clearly established is not "whether an earlier case mirrors the specific facts here," but rather, whether the state of the law gave Lohner official fair warning that his conduct toward Addison was unconstitutional. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013). "Closely analogous case law is not required to show that a right was clearly established." *Ford*, 706 F.3d at 1196.

Lohner tries to frame the questions more narrowly: would a police officer have been on notice that he cannot direct an employer to public records (*i.e.*, the "fact file")? (Def. Mot. at 29.) Lohner likely is trying to fit his case within the framework of *Monico v. City of Cornelius*, No. 03:13-cv-02129-HZ, 2015 U.S. Dist. LEXIS 44634, at *35-37 (D. Or. Apr. 6, 2015), in which the defendants successfully argued that providing a publicly-filed opinion by Magistrate Judge Papak to the plaintiff's employer was not actionable.

The present case is distinguishable. First, in *Monico*, neither party questioned that the judicial opinion was, in fact, the judicial opinion. Here, there is a genuine dispute of material fact as to the authenticity, source and contents of the alleged "public record" New Directions received. (*See* Pltf. Mot. at 6-7; Ex. B, Hendricks Dep. at 21:23-22:1, 39:4-24;

Page 14 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

Ex. F, Sackos Dep. at 14:14-23, 35:17-37:7, 45:9-47:18, 52:9-24; Ex. L, p. 3; Exs. Q, R; Ex. Y, Taylor Dep. at 56:24-59:15.)

Further, Lohner's argument fails to account for the totality of Lohner's conduct as revealed by the record (construed in Addison's favor): in retaliation for Addison's Editorial, Addison's ongoing work for the *Baker County Press*, his interview in the Article, and petitioning government on New Directions' behalf, Lohner spoke with New Directions, characterized Addison as dangerous/unsuitable and then attempted to support that claim through a "fact file" and incident report conveniently missing key information and apparently provided through atypical channels.

Simply put: Addison alleges retaliatory acts, plain and simple.  If thirteen-year-old cases generally proscribing First Amendment retaliation sufficiently notify law enforcement officers that they cannot even make retaliatory arrests when supported by probable cause, *Ford*, 706 F.3d at 1195-96, then such cases surely placed Lohner on notice that he could not do what he did.

## C.    Issues of Fact Preclude Summary Judgment on Supervisory Liability For First Amendment Retaliation

"A supervisor may be liable [on a Section 1983 claim] if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (emphasis in original) (internal quotation marks omitted). "The requisite causal connection can be established ... by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). "A plaintiff must also show that the supervisor had the requisite animus to establish liability." *Jones v. Cate*, No. 2:12-cv-2181 TLN CKD, 2016 U.S. Dist. LEXIS 8463, at *18 (E.D. Cal. Jan. 22, 2016), citing *OSU*

Page 15 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

*Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012). There are issues of fact that preclude summary judgment on this claim.

Defendants assert: "[i]t is undisputed that at no time has Chief Lohner ever directed any Police Officer employed by Baker City to stop Brian Addison; nor has Chief Lohner ever directed any Police Officer employed by Baker City to retaliate against Brian Addison for any reason . . .; nor has Chief Lohner ever directed any Police Officer employed by Baker City to retaliate against Brian Addison for any newspaper articles written by Brian Addison or for any statement made by Brian Addison to a newspaper." The only evidence that Defendants cite in support of this assertion is Lohner's self-serving declaration. (See Def. Motion at 29.)

The information reflected in the fact file, copies of traffic warnings, and Addison's testimony suggest otherwise. The fact file dates back to 2004. (Ex. Q.). It lists no traffic stops, warnings, or citations prior to 2008. (*Id.*) After 2008, there are 19 entries and, according to Addison, that number does not account for all stops. (*Id.*; *see also* Ex. C, Addison Dep. at 67:7-21, 69:4-75:1, 85:19-86:9, 88:6-89:23, 103:22-106:1 and 130:19-131:11; Ex. J). The traffic stops culminated in the June 1, 2014 stop by Officer Dustin Newman that Lohner claims is evidence of Addison's "mood swings" and that he recounted to two of Addison's employers. (Ex. X, Lohner Dep. at 106:7-108:9, 108:25-110:21, 129:10-131:4; Ex. U.) While Addison is not suing directly to recover for any stops that occurred prior to October 29, 2013, those incidents are relevant evidence of retaliatory motive. *Heidt v. City of McMinnville*, No. 3:15-cv-0989-SI, 2015 U.S. Dist. LEXIS 172361, at *8 (D. Or. Dec. 29, 2015) (Simon, J.), citing *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002). They also explain any frustrated reaction

Page 16 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

Addison may have had to the stop by Officer Newman, which Addison denies.[7] (Ex. C, Addison Dep. at 85:7-11.)

As Addison testified, most of the stops prior to and including the June 2014 stop were illegitimate and the infractions alleged in the warnings untrue. (Ex. C, Addison Dep. at 67:7-21, 69:4-75:1, 85:19-86:9, 88:6-89:23, 103:22-106:1, and 130:19-131:11.) Addison testified that he did not lose his temper with Officer Newman or yell at him during the June 1, 2014 stop, and when asked about another stop, Addison commented that he was "flustered" because he had been "[p]ulled over so many times." (Ex. C, Addison Dep at 85:7-18.) Given that the stops started occurring *after* publication of the Editorial that criticized the BCPD and offended Lohner, a rational jury could infer that Lohner directed the stops and increased monitoring of Addison. Even if Lohner did not direct these stops, including the 2014 stop by Newman, a rational jury could infer that as Police Chief, Lohner was aware of them and took no action to stop them.

Defendants also rely solely on Lohner's declaration to support the claims that he "never directed any Police Officer employed by Baker City to provide any materials concerning the Plaintiff to New Directions during the Plaintiff's employment with New Directions" and that "no Police Officer employed by Baker City provided any materials concerning the Plaintiff to New Directions." (*See* Def. Mot. at 30.) Evidence was adduced during discovery that contradicts Lohner's statements and indicates that the "fact file" that New Directions obtained was not from the BCCD and, in fact, came from the Baker City Police Department.  (Pltf. Mot. at 6-7; Ex. B, Hendricks Dep. at 21:23-22:1, 39:4-24; Ex. F, Sackos Dep. at 14:14-23, 35:17-37:7, 45:9-47:18, 52:9-24; Ex. L, p. 3; Ex. Q; Ex. R; Ex. Y, Taylor Dep. at 56:24-59:15.)

---

[7] The only evidence Defendants offer to contradict Addison's account of that stop is Lohner's testimony regarding what Officer Newman purportedly told him.  That testimony is inadmissible hearsay under FRE 801(c).

Page 17 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

The evidence of Lohner's retaliatory motive for directing these actions or permitting them to occur is described above at pages 11-14, and Section II. Addison's Second Claim for Relief should be permitted to go to a jury.

Finally, for the same reasons that Lohner is not entitled to qualified immunity on the First Claim for Relief (pp. 14-15), Lohner is not entitled to qualified immunity on this claim.

**D.** **Defendants Fail To Meet Their Burden For Summary Judgment On Municipal Liability For First Amendment Retaliation**

Defendants' only argument in favor of summary judgment on this claim is that "because Chief Lohner is not liable to the Plaintiff as set forth above; therefore, Baker City cannot be held liable." (Def. Mot. at 31.) For all of the reasons set forth above in Section IV(A)-(B), there is, at a minimum, an issue of fact regarding Lohner's liability. Therefore, Defendants' argument on the Third Claim for Relief fails. Because Defendants have not offered any independent reasons for why Addison's claim for municipal liability fails, they have failed to meet initial burden on summary judgment and their motion must be denied. *See Aranda v. City of McMinnville,* 942 F. Supp. 2d 1096, 1109-1110 (D. Or. 2013) (Simon, J.) (denying motion for summary judgment on municipal liability claim because city failed point to any evidence why plaintiff could not succeed on the theory of municipal liability pled in the complaint).

## V.    THE INTERFERENCE WITH EMPLOYMENT CLAIM SHOULD GO TO THE JURY

Under Oregon law, the elements of interference with employment are:

(1) The plaintiff had an employment relationship;

(2) The defendant was not a party to the employment

relationship;

Page 18 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

(3) The defendant intended to interfere with the relationship or knew that such interference was substantially certain to occur from the defendant's actions;

(4) The defendant interfered through improper means or for an improper purpose in one or more of the ways alleged by the plaintiff;

(5) The defendant's interference caused harm to the relationship; and

(6) The defendant's interference resulted in damages to the plaintiff

Ore. UCJI 57.02 (2005 rev. with 2006-2016 supps.).

"*Harm* means that the plaintiff's employment relationship is more difficult to perform or less valuable or profitable to the plaintiff, or the plaintiff is otherwise prevented from receiving the full benefits of his employment relationship." Ore. UCJI 57.03 (2005 rev. with 2006-2016 supps.). The tort can apply to at-will employment. *Lewis v. Oregon Beauty Supply Co.*, 302 Ore. 616, 620 (1986).

There is prima facie evidence to support each of these elements.  It is undisputed that at the time of Lohner's November 12 email and November 13 phone calls with Lind, Addison and New Directions had an employment relationship. (Ex. B, Hendricks Dep. at 41:6-42:1; Ex. H; Ex. X, Lohner Dep. at 125:1-3.) It is also undisputed that Lohner, a Baker City employee, was not a party to Addison and New Directions' employment relationship.  (Lohner Decl. at 2 ["I have been employed by Baker City as a police officer since 1999."].)  In addition, there is evidence to support that Lohner intended to interfere with Addison's employment relationship or knew that such interference was substantially certain to occur.  Specifically, Lohner affirmatively reached out to, Lind, the second in command at New Directions, about a "recent hire", whom  Lohner later identified to Lind

Page 19 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

as Addison, and inquired about New Directions' background check policies to which Lind responded: "we do internal background checks, including DHS background checks . . . something we should know???" (Ex. O, p. 5; Ex. X, Lohner Dep. at 123:3-125:3.) Rather than asking in an email if their checks include local records or explaining what kind of information may generally be obtained from the BCCD, Lohner instructed New Directions: "Give me a call . . . ." (Ex. O, p. 5.)

There are issues of fact regarding what was said during Lohner's phone conversations with Marji Lind of New Directions, but Lohner admitted that he described a caution flag that he gave Addison and relayed hearsay about Addison "going off" on another police officer. (Ex. X, Lohner Dep. at 129:10-131:4.) There is no dispute that Lohner told Lind about the availability of "local" records. (Ex. X, Lohner Dep. at 129:10-130:1; ECF No. 50, Ex. 117, Lind Dep. at 13:13-14:6.) There is also no dispute that the day after Lohner's discussions with Lind, New Directions obtained a copy of Addison's fact file and the incident report of the June 2008 stalking allegations involving Addison and the *Record-Courier*, an event that Lohner admits discussing with Lind. (Ex. B, Hendricks Dep. at 22:9-16; Ex. Q; Ex. X, Lohner Dep. at 129:10-131:4; 132:10-133:2.).

As to the element of whether Lohner interfered through improper means or for an improper purpose, there is evidence that Lohner interfered through improper means by retaliating against Addison for exercising his First Amendment Rights and by defaming Addison, and for the improper purpose of retaliation. (*See* Sections III(A); Section V(A)). There is also evidence that the fact file obtained by New Directions came from the Baker City Police Department and not the "sheriff's office" as claimed by New Directions and Lohner. (Ex. B, Hendricks Dep. at 21:23-22:1; Ex. F, Sackos Dep. at 37:3-7, 52:9-24; Ex. R; Ex. Y, Taylor Dep. at 56:24-59:15.).

On the elements of causation and damages, under Oregon law, discharge is not necessary in order to establish a claim for intentional interference. *Or. Beauty Supply*,

Page 20 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

302 Ore. at 622-23 ("Discharge is not a necessary element of this tort. The salient inquiry in any interference claim is whether defendant's tortious conduct damaged plaintiff's economic or contractual relationship.") In any event, there is an issue of fact regarding whether Lohner's acts caused New Directions to terminate Addison.

Although New Directions' witnesses testified that Addison was terminated for insubordination and that the decision was made to terminate Addison prior to the phone conversations with Lohner and receipt of the fact file and incident report on Addison, the chronology of events suggests otherwise.[8] The claimed acts of insubordination relating to the newspaper article occurred on November 3, 2014. (Ex. CC Selander Dep. at 26:10-30:23, 54:16-55:22, 66:10-16; Ex. GG.) The Article was published on November 10, 2014. (Ex. N.) On November 12, 2014, New Directions placed Addison on a 30-Day Work Plan, pursuant to which there were supervisor meetings scheduled for each Monday, starting November 17. (Ex. CC, Selander Dep. at 11:2-9; Ex. DD, Deputy Dep. at 29:2-30:16; Ex. HH.) Addison's direct supervisor testified that she did not remember Addison doing anything between November 12 and November 14 to violate the Work Plan. (Ex. DD, Deputy Dep. at 31:7-20.) In the morning and afternoon of November 13, Marji Lind spoke to Lohner and Lohner told her about Addison's "mood swings" and incident at his former employer, the *Record-Courier.* (Ex. X, Lohner Dep. at 130:2-131:17, 134:22-135:16). Karen Hendricks obtained the fact file and incident report on the morning of November 14 and she and Ms. Selander looked at the records before preparing the termination paperwork. (Ex. B, Hendricks Dep. at 21:14-22:23; Ex. Q.) Addison was terminated a few

---

[8] Defendants cite Karen Hendricks' testimony to support their assertion that "the process to terminate the Plaintiff by New Directions had already begun before Marji Lind talked to Chief Lohner" (Def. Mot. at 33). However, Ms. Hendricks testified that she did not make the decision to terminate. (ECF 50, Ex. 116, Hendricks Dep. at 15:12-14.) The evidence therefore lacks foundation for the purpose to which it is being put.

Page 21 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

hours later. (Ex. P). From this evidence, a rational jury could infer that Lohner's interference was the cause of Addison's termination.

Finally, there is an issue of fact regarding Defendants' contention that "Chief Lohner was acting within the scope and course of his employment when [he] communicated with Marji Lind" (Def. Mot. at 31), which precludes summary judgment on Count 2 of the Fourth Claim for Relief. The only evidence to support Defendants' assertion are Lohner's statements that he "was on duty as the Chief of Police for Baker City and was in my full police uniform" when he emailed Ms. Lind and during his phone discussions with her. (Lohner Decl. at 2-3.) He also states that he was on duty when he contacted Kerry McQuisten on June 2, 2014, though does not mention being on duty when he met with her on June 3, 2014. (Lohner Decl. at 11.)

Just because someone is on duty or at work does not mean that all of their actions are within the course and scope of their employment.  Indeed,

> "[t]hree requirements must be met to conclude that an employee was acting within the scope of employment. These requirements traditionally have been stated as: (1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform."

*Chesterman v. Barmon*, 305 Ore. 439, 442, (1988); *see also Greisen v. Hanken,* No. 3:14-cv-01399-SI, 2015 U.S. Dist. LEXIS 35749, at *12 (D. Or. Mar. 23, 2015) (Simon, J.) (citing same test to determine whether a public employee is acting within the scope of his or her employment). "Whether a party has acted within the scope of employment presents a jury question if there is a genuine factual dispute."  *Draper v. Astoria Sch. Dist. No. 1C*,

Page 22 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

995 F. Supp. 1122, 1141 (D. Or. 1998) (finding that record did not support determination of motive as a matter of law). Here, Defendants offer no evidence to meet the requisite test. On this record, both counts of Addison's intentional interference claim should go to the jury.[9]

## VI.    THE DEFAMATION CLAIM SHOULD GO TO THE JURY

Addison has pled three counts of defamation. For the reasons explained below, Defendants' motion for summary judgment fails as to all counts.

Defendants seek summary judgment on Count 3, against Lohner, solely on the ground that "Chief Lohner was acting within the scope and course of his employment at the time he communicated with Marji Lind of New Directions." (Def. Mot. at 41.) Defendants have not satisfied their burden to establish that as a matter of law that Lohner acted within the scope of his employment when he made the alleged defamatory statements. (*See* p. 22, above.) Therefore, Defendants are not entitled to summary judgment on Count 3.

With respect to Counts 1 and 2, Defendants first assert that "the statements of Chief Lohner that were made to Marji Lind are protected by the First Amendment." (Def. Mot at 41-43.) As explained in Addison's motion for partial summary judgment, the content, form, and context of Lohner's speech indicate that it was not on a matter of public concern and therefore there is no heightened First Amendment protection. (*See* Pltf. Mot. at 16-20; *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 761 (1985); *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011); *Cooper v. PGE*, 110 Ore. App. 581 (1992), *rev. denied*, 830 P.2d 595 (Apr. 28, 1992).)

Defendants next argue that they are entitled to summary judgment on Counts 1

---

[9] Despite what Defendants claim (Def. Mot. at 31-32), finding an issue of fact as to whether Lohner was acting in the course and scope of his employment does not entitle Defendants to dismissal of all Section 1983 claims.

Page 23 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

and 2 on the merits. Specifically, that (1) "none of the statements made by Chief Lohner were false, much less defamatory" (Def. Mot. at 42, 43); (2) "it is undisputed that Chief Lohner never provided the 'Fact File' to New Directions" (Def. Mot. at 43; *see also* Def. Mot. at 44); and (3) "no one from the Baker City Police Department provided the report to New Directions" (Def. Mot. at 44). There are issues of fact as to all of these matters that preclude summary judgment on Addison's defamation claim.

Under Oregon common law, a defamation plaintiff must prove that defendants made a false and defamatory statement about plaintiff and published that statement to a third party. *Neumann v. Liles*, 358 Ore. 706, 711 (2016). In general, a defamatory statement is one that would, among other things, "tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held or to excite adverse, derogatory or unpleasant feelings or opinions against" the plaintiff. *Id.* In the professional context, a defamatory statement is one that falsely "ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade [or] profession." *Id.* (citing *Brown v. Gatti*, 341 Ore. 452, 458 (2006) (internal quotation marks omitted).

There is evidence from which a reasonable jury could infer that Lohner's statement to New Directions concerning Addison was different from what Lohner and Marji Lind described in their testimony. Evidence in the record indicates that New Directions, a facility specializing in mental health and addiction treatment, would not be dissuaded from continuing to employ someone simply because he has "mood swings," the term Lohner claims he used with New Directions in reference to Addison. (*See* above, pp. 2-4, 12-14.)

In addition, though Lohner admits that he told Lind about Addison's "mood swings" and expressed concern over Addison working with "vulnerable populations" (Ex. X, Lohner Dep. at 134:22-135:16), Lind testified that Addison's name never even came up during the phone conversation. (ECF No. 50, Ex. 117, Lind Dep. at 13:13-14:13.) Lind

Page 24 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

also testified that following the discussion with Lohner she contacted Karen Hendricks, and said "Hey, I just received a suggestion to update our policy and procedure and the process we use for background checks" and that the two discussed getting records on local hires and the budgets associated with that. (Ex. EE, Lind Dep. at 16:3-17:6, 17:17-18:8.) Ms. Hendricks testified that there was no discussion at that time about obtaining reports about other New Directions employees, or about changing overall policies and procedures. (Ex. BB, Hendricks Dep. at 11:12-15; 13:4-8.) Rather, the discussion she had with Ms. Lind and Ms. Selander immediately after Lohner's phone conversation with Ms. Lind was about needing to obtain "a report about Mr. Addison" because "[t]here might be something of a concern." (Ex. BB, Hendricks Dep. at 10:9-11:8.) Ms. Selander testified that she directed Ms. Hendricks to obtain records on Addison, but she could not articulate why. (Ex. CC, Selander Dep. at 65:8-66:9.) Addison was terminated after New Directions obtained and reviewed the fact file and incident report. (Ex. B, Hendricks Dep. at 21:14-22:23; Exs. P, Q.)

The material discrepancies between the New Directions witnesses' testimony, and Lohner's testimony, preclude summary judgment. *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009) (holding that third-party evidence may be introduced to contradict party's testimony, thereby creating an issue of fact; vacating entry of summary judgment in favor of police officers and city in § 1983 action).

But even if the statements were as Lohner claims, they are defamatory.  In fact, they are defamatory *per se*. Spoken words that injure a plaintiff in his or her profession or trade may constitute slander *per se*; the plaintiff need not prove specific harm. *Neumann*, 358 Ore. at 712 (collecting cases); *L & D of Ore., Inc. v. Am. States Ins. Co.*, 171 Ore. App. 17, 26 (2000) ("Defamatory statements that attack a person in their professional or employment capacity are actionable per se when they attack specific characteristics that pertain to plaintiff's field of employment.") Here, Lohner admits that he called Addison's

Page 25 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

employers, described the "Caution Flag" that Lohner had placed in Addison's dispatch records, and warned Addison's employers of his "mood swings." (Ex. X, Lohner Dep. at 18:8-20:3, 106:6-110:21, 123:2-125:13, 129:10-131:4, 132:10-133:2.) Lohner also admits that he expressed concern to New Directions over Addison working with "vulnerable populations." (Ex. X, Lohner Dep. At 134:22-135:16.) Such statements, made to Addison's employers, attack Addison in his professional capacity and are therefore defamatory *per se*.

On the issue of whether Lohner provided or directed someone from the Baker City Police Department to provide the fact file to New Directions, which is relevant to Count 2, evidence was adduced during discovery that indicates that the fact file was not from the BCCD and, in fact, came from the Baker City Police Department. (Pltf. Mot. at 6-7; Ex. B, Hendricks Dep. at 21:23-22:1, 39:4-24; Ex. F, Sackos Dep. at 14:14-23, 35:17-37:7, 45:9-47:18, 52:9-24; Ex. L, p. 3; Ex. Q; Ex. R; Ex. Y, Taylor Dep. at 56:24-59:15.)

Finally, Defendants argue that even if Baker City could be liable on the merits, they are entitled to summary judgment on Counts 1 and 2 because the statement made by Lohner were discretionary in nature and made within the scope and course of his duties and employments, and because the statements were absolutely privileged under Oregon law. For the reasons set forth in Sections VII and VIII, Defendants' arguments fail. Therefore, the Court should deny Defendants' motion for summary judgment on the Fifth Claim for Relief.[10]

## VII.    LOHNER IS NOT ENTITLED TO ABSOLUTE IMMUNITY ON THE COMMON LAW CLAIMS

The ordinary framework for deciding motions for summary judgment applies to

---

[10] Addison does not understand Defendants to be moving for summary judgment on the privilege defenses contained in their Fourth and Twelfth Affirmative Defenses. (ECF No. 45 at 6, 9.) If they are, issues of fact preclude summary judgment on each of those defenses.

Page 26 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

motions for summary judgment based on official immunity. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). However, "officials seeking the protection of absolute rather than qualified immunity bear the burden of showing that public policy requires an exemption of that scope." *Butz v. Economou*, 438 U.S. 478, 506 (1978) (federal official); *Buckles v. King Cty.*, 191 F.3d 1127, 1133 (9th Cir. 1999) (same, in case involving county official).

A.    **Issues Of Fact, Concerning Whether Lohner Was Required Or Authorized  To Contact New Directions Concerning Addison, Preclude Summary Judgment**

Lohner invokes the judicially-created doctrine of absolute immunity. Absolute immunity is an "extreme remedy." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (*en banc*) (so noting, denying absolute immunity in context of claims against sheriff's department and district attorneys). "The purpose of such official immunity is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation." *Westfall v. Erwin*, 484 U.S. 292, 295 (1988).

In *Shearer v. Lambert*, 274 Ore. 449 (1976), the Oregon Supreme Court held – albeit reluctantly – that executive, legislative and administrative officials at all levels of government in Oregon are absolutely immune from defamation lawsuits, **but** "only if [they] publish[] the defamatory matter in the performance of [their] official duties." *Id.* at 454-455. Notably, the *Shearer* Court reversed the trial court's sustained demurrer on the grounds of absolute immunity because "[i]f this case were to go to trial, it is possible that the evidence would show that defendant was neither required nor authorized" to make the statements at issue to the audience at issue. *Id.* at 455.

Lohner has not carried his burden of persuasion on the absolute immunity affirmative defense.  Nowhere has he explained how the record in this case demonstrates that he was "required" or "authorized" to discuss with New Directions Addison's purported

Page 27 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

"mood swings," the Caution Flag that Lohner ordered be placed in Addison's file, or the stalking citation. (Ex. X Lohner Dep. at 129:10-131:4.)

Furthermore, with respect to communications with Kerry McQuisten, Addison's boss at the *Baker County Press*, there is an issue of fact as to whether Lohner's communications concerning Addison were made in Lohner's official capacity. ████

████████████████████████████████████████████

████████████████████████████████ (Second Davidson Decl. (Sealed), Ex. VV, Lohner Dep. at 183:18-184:12.)[11]

Even if Lohner had produced evidence supporting his assertion of absolute immunity, there is, at minimum, a genuine issue of material fact for determination by the jury with respect to Lohner's authority to call employers about prospective or current employees. The City's Rule 30(b)(6) designee, Mike Kee, testified that beyond the City Charter and the oath of office, there is "no other policy that either gives him [the Police Chief] authority or, you know, controls the authority, aside from the laws." (Ex. LL, Kee Dep. at 50:22-52:10.) In response to several requests for production, neither defendant produced any document setting forth the Police Chief's authority.

On reply, Lohner might cite to what he says is his "job description" (Def. Ex. 104) as evidence that he is "required" or "authorized" to call employers about applicants or employees. Assuming, *arguendo*, that Exhibit 104 is a "job description," the Supreme Court has held that the contents of job descriptions are "neither necessary nor sufficient" to demonstrate that alleged conduct is within the scope of an employee's professional duties for First Amendment purposes. *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). As this is the only evidence Lohner presents that he is authorized to contact employers

---

[11] ████████████████████████████████████████████

████████████████████████████████████████████

Page 28 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

unsolicited about their hires as part of his official duties, Defendants' immunity claim fails.[12]

It also appears that Exhibit 104 is not even a "job description." Kee testified as the City's designee that the Position Description, marked as Exhibit 13 at Kee's deposition, "looks more like a memo for a vacancy. It outlines the essential job functions. However, it's not a Position Description." (Ex. LL, Kee Dep. at 32:20-33:16.)  Further, the document says nothing about contacting employers about applicants or employees. And, as noted above, the City's designee has testified that there is no document, other than the City Charter, that "gives [Lohner] authority." (Ex. LL, Kee Dep. at 51:2-17.)

The facts of this case closely resemble those in *Sizemore v. City of Madras*, No. 02-74-KI, 2005 U.S. Dist. LEXIS 49622, 2005 WL 273006 (D. Or. Feb. 2, 2005). There, Judge King denied summary judgment on the Madras mayor's absolute immunity defense. The plaintiff in that case was the former city manager. He alleged, among other things that plaintiff's employment agreement was one of the mayor's major campaign issues, (*id.* at *3), and that instead of addressing plaintiff's termination in closed session per typical procedures, the mayor made a point of reading aloud in open City Council session a defamatory letter that accused the plaintiff of criminal acts, *id.* at *4.

The mayor moved for summary judgment on his purported absolute immunity defense. Judge King ruled that issues of fact precluded summary judgment:

> "In this case, plaintiff contends that there is at least a jury question as to whether Mayor Allen was authorized or required to publish charges of criminal conduct against

---

[12] Although not squarely on point, Judge Hernández's treatment of the claims in *Monico v. City of Cornelius*, No 3:13-cv-2129-HZ, 2015 U.S. Dist. LEXIS 44634, at *27-*27 (D. Or. April 6, 2015), provides a useful analysis of whether a public employee's statements are made within the scope of his official duties.

Page 29 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

> plaintiff, especially where he did so prior to fully investigating those charges, prior to asking for or receiving the plaintiff's response to the charges, and prior to conducting a hearing . . . . [T]here is a question of fact as to whether Mayor Allen was required or authorized to make statements evaluating plaintiff to the public and press, and prior to the public [termination] hearing on February 13, 2001, especially given the City Council's alleged history of handling personnel matters in executive session."

*Sizemore*, 2005 U.S. Dist. LEXIS at *16.

This Court should reach the same conclusion. Like the Mayor of Madras, Lohner may not obtain summary judgment unless he shows that there is no issue of fact with respect to the scope of his authority. He cannot rest on the fact that he is the Chief of Police to justify his actions. Indeed, that would be particularly inappropriate in a case such as this which turns on whether the Chief of Police abused his position. And, like the Mayor of Madras, Lohner admits that he did not perform any investigation before making allegations. (Ex. X, Lohner Dep. at 62:9-15, 135:17-20.)

Public policies restricting employers' use of criminal records – or, even arrests – provide an additional rationale for not simply accepting Lohner's job title as authorization to defame employees or job applicants without consequence. The Oregon Legislature recently passed a "Ban the Box" law, which forbids employers from denying initial interviews on the basis of criminal convictions. HB 3025, Ch. 559 (2015 Reg. Sess.) The Oregon Legislature has placed strict limitations on the use of information in the possession of the Oregon State Police. (*See* Ex. OO, Lohner Dep. 93:10-97:22; Ex. QQ.) Nevertheless, Lohner believes that he is entitled to call employers – of his own volition – and discuss the contents of Baker City police reports even if they contain the same

Page 30 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

information that ultimately finds its way to the State Police LEDS database. (Ex. OO, Lohner Dep. 64:3:17.)

Further, in 2012, two years before Lohner called New Directions, the Equal Employment Opportunity Commission issued guidance cautioning employers against the use of arrest and conviction records in employment decisions. Enforcement Guidance No. 915.002 (Apr. 25, 2012): Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, *available at* http://www.eeoc.gov/laws/guidance/arrest_conviction.cfm (accessed March 9, 2017). While Addison does not claim any status protected under Title VII, the rule Lohner urges – that he can speak with any employer about the local police contacts of anyone – undermines the EEOC protections.

For the foregoing reasons, the Court should conclude that Lohner has not carried his burden of production as to any defense of absolute immunity pursuant to judicially-created immunity doctrine.

**B.**    **Oregon Tort Claims Act Immunity Does Not Apply Because Lohner Did Not Exercise "Discretion" Within The Meaning Of That Statute**

Lohner cannot avail himself of absolute immunity under the Oregon Tort Claims Act (OTCA). As noted above, there are questions of fact concerning whether Lohner acted with authorization and, in the case of his communications with McQuisten, whether he was acting in his official capacity.

Relatedly, Lohner's speech was not "discretionary" within the meaning of the OTCA, therefore immunity is unavailable as a matter of law. In his Sixth Affirmative Defense (ECF No. 45 at 7 ¶ 17), Lohner alleges that he is immune from liability pursuant to  ORS § 30.265(6)(c), which provides:

> "Every public body and its officers, employees and agents
>
> acting within the scope of their employment or duties . . . are

Page 31 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

> immune from liability for . . . (c) Any claim based upon the
> performance of or the failure to exercise or perform a
> discretionary function or duty, whether or not the discretion is
> abused."

'Discretionary function or duty' is a term of art:

> "[T]he decision of a governmental official, employee, or body
> is entitled to discretionary immunity if a governmental person
> or entity made a policy choice among alternatives, with the
> authority to make that choice."

*Westfall v. State*, 355 Ore. 144, 157 (2014) (en banc) (emphasis added); *see Turner v. State*, 359 Ore. 644, 652 (2016) ("In a nutshell, government conduct amounts to performance of a "discretionary function or duty" if it "is the result of a choice among competing policy considerations, made at the appropriate level of government."" [citation omitted].).

Discretionary immunity does not apply to routine decisions made by employees in the course of their day-to-day activities, "even though the decision involves a choice among two or more courses of action." *Id.*; *see Austin v. Univ. of Or.*, No. 6:15-CV-02257-MC, 2016 U.S. Dist. LEXIS 121198, at *33 (D. Or. Sep. 8, 2016) (McShane, J.) ("ORS 30.265(6)(c) deals with decisions involving public policy and made under the apparent authority of law." [emphasis added].)

Thus, Oregon appellate courts repeatedly have denied immunity to police officers making routine decisions in the course of their day-to-day activities, as opposed to policy decisions. *Lowrimore v. Dimmitt*, 310 Ore. 291, 296 (1990) (denying discretionary immunity because "the making of the decision not to pursue [a motorist] does not create any departmental policy); *McBride v. Magnuson*, 282 Ore. 433, 435, 437-38 (1978)

Page 32 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

(reversing dismissal where plaintiff alleged that Youth Division officers lacked probable cause to place plaintiff's son in protective custody, and collecting cases).

The fact that this case involves the Chief of Police, rather than an officer inferior in rank, does not alter the analysis:

> "Although policy discretion is more likely to be found at or near the level of political responsibility, it is not simply a matter of the defendant's office but of the scope and nature of the choices delegated to him. Thus a judge was denied tort immunity when he issued an arrest warrant without having received a sworn complaint as required by law, while employees as well as members of the highway commission were immune in making a broadly delegated range of choices in constructing a highway."

*Id.* at 438 (citations omitted).

Accepting Lohner's testimony at face value, the evidence reveals that communicating with New Directions and McQuisten were routine, day-to-day choices and not the performance of a discretionary function or duty. As discussed above on pages 5 and 29, no City policy or other document "gives" Lohner authority beyond the City Charter, his oath and the laws of Baker, Oregon and the United States. (Ex. LL, Kee Dep. at 51:2-52:4.)

Perhaps immunity would be implicated had Addison sued for a choice that Lohner made when setting police policy – a role that **has** been delegated to Lohner. (Ex. LL, Kee Dep. at 37:6-40:22); *see Turner*, 359 Ore. at 644 ("A governmental actor performs discretionary functions and duties when exercising delegated responsibility for making decisions committed to the authority of that particular branch of government that are based on assessments of policy factors, such as the social, political, financial, or

Page 33 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

economic effects of implementing a particular plan or of taking no action.") However, what Addison has alleged, and what the record reflects, is that Lohner's decision to speak with Addison's employers is no different than deciding to pursue a suspect – an activity for which the OTCA does not offer absolute immunity. *Lowrimore*, 310 Ore. at 296; *see Martinez v. Oregon*, No. 6:10-cv-06007-AA, 2012 U.S. Dist. LEXIS 121186, at *22 (D. Or. Aug. 27, 2012) (denying OTCA immunity and noting that immunity does not apply to the choice to follow or not follow a predetermined policy in the face of a particular set of facts.)

**C.** **Lohner Has Not Satisfied His Burden Of Showing That Public Policy Requires Absolute Immunity**

On summary judgment, the burden is on the official seeking absolute immunity to show that the immunity is "justified by overriding considerations of public policy." *Martinez*, 2012 U.S. Dist. LEXIS 121186 at *17 (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). This requires a showing of an exceptional situation "where it is demonstrated that absolute immunity is essential for the conduct of public business." *Butz v. Economou*, 438 U.S. 478, 507 (1977).

Defendants have presented no argument or evidence in this respect, therefore they are not entitled to summary judgment on absolute immunity. *Martinez*, 2012 U.S. Dist. LEXIS 121186 at *17-*18 ("Defendants fail to carry their burden in establishing their entitlement to this defense. Specifically, defendants neglected to adequately brief this issue or present any evidence in support of their defense. Thus, nothing in the record indicates that defendants were engaged in functions paralleling those of judges or prosecutors. Accordingly, there are no overriding considerations of public policy which justify the application of absolute executive immunity in the present dispute.")

Page 34 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

### VIII.    THE DUE PROCESS CLAIMS SHOULD GO TO THE JURY

The Due Process Clause "forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008). Addison alleges both procedural and substantive due process claims. To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Heidt*, 2016 U.S. Dist. LEXIS 163996 at *26 (citing *Shanks*, 540 F.3d at 1090). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty or property." *Heidt*, 2016 U.S. Dist. LEXIS 163996 at *26-*27 (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)).

**A.**    **Procedural Due Process:  Addison Has Made A Prima Facie Showing Of A Property Interest In Employment With New Directions For The Remainder Of His "30-Day Work Plan"**

To determine whether due process requirements apply to an asserted interest, the Court initially looks to the nature of the interest at stake. *Merritt v. Mackey*, 827 F.2d 1368, 1370 (9th Cir. 1987) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972)). "It is indisputable that an individual may have a protected property interest in private employment." *Merritt*, 827 F.3d at 1370. "[T]he right to hold specific private employment and to follow a chosen profession free from reasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492 (1959). Applying Greene, the Ninth Circuit noted in *Merritt*:

> "[W]here the actions of private individuals operate to deprive
> an individual of his employment, a suit for interference with
> private contractual relationships would lie, but where

Page 35 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

> government officials are involved, the nature of the interest at
>
> stake in private employment is a property interest."

*Merritt*, 827 F.2d at 1371.

A plaintiff must establish the existence of a property interest in continued employment by demonstrating a reasonable expectation based upon "state law, rules or regulations concerning discharge or express or implied promises." *Id.* (citing *Roth*, 408 U.S. at 577.)

Although Defendants rightly point out that at-will employment <u>by itself</u> does not give rise to a constitutionally-protected property interest, there is an issue of fact as to whether New Directions modified the at-will relationship when it placed Addison on a "30-Day Work Plan" on November 12, 2014 – the day Lohner called and two days before Addison was fired. There had been some confusion concerning whether Addison was authorized to provide information in connection with the Article. Accordingly, New Directions presented him with a 30-Day Work Plan. (Ex. DD, Deputy Dep. at 27:24-32:1; Ex. HH.)  When he was presented the 30-Day Work Plan, he was told that his employment would continue for a 30-day period so long as he complied with the terms of the 30-Day Work Plan. (Addison Decl. ¶¶ 2-3.) The 30-Day Work Plan stated: "We will meet each week during our regular scheduled supervision time, which is Mondays at 3:00 pm, to review your compliance with this work plan." (Ex. HH at 2.) The 30-Day Work Plan, which was signed by two New Directions supervisors, then had Addison acknowledge above his signature:

> "I agree to the above Work Plan conditions and expectations.
> I realize that New Directions Northwest, Inc. will monitor this
> Plan and can extend the work plan as needed per the
> Supervisors.  I recognize that failure to comply with these
> conditions and expectations as expressed in the work plan

Page 36 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

may result in disciplinary action up to and including

termination."

(*Id.*) Addison was fired on November 14 and was not given the opportunity to comply with

this plan.

The 30-Day Work Plan is similar to another plan that the Oregon Supreme Court

found had modified an at-will employment relationship. In *Bennett v. Farmers Ins. Co.*,

332 Ore. 138, 146-149 (2001), the at-will employee plaintiff was placed on a "performance

plan." The Oregon Supreme Court reversed the trial court's grant of JNOV on plaintiff's

breach of contract claim because plaintiff had presented trial evidence that he was

informed that he would not be terminated unless he violated the terms of his "performance

plan."

There thus is an issue of fact as to whether Addison possessed a constitutionally

cognizable property interest in his employment at New Direction for, at a minimum, the

30 days encompassing November 12, 2014 to December 12, 2014. *Federal Deposit Ins.*

*Corp. v. Henderson*, 940 F.2d 465 (9th Cir. 1991) controls. In that case, the Ninth Circuit

held that where a bank president had an at-will employment contract with a ninety-day

notice provision, he possessed a property interest within the meaning of the Due Process

Clause, for a ninety-day period. *Id.* at 475. Because the plaintiff had not been afforded an

opportunity to challenge his termination, his procedural due process rights had been

violated. *Id.* at 476.

**B.**     **Procedural Due Process:  Defendants Are Responsible For The Deprivation**
         **Of Addison's Property Right In Anticipated Further Employment**

Having demonstrated a property interest of which he was deprived, Addison must

demonstrate that Defendants deprived him of that interest and a lack of adequate

process. *Heidt*, 2016 U.S. Dist. LEXIS 163996 at *26 (citing *Shanks*, 540 F.3d at 1090).

Page 37 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

The framework set forth in *Merritt v. Mackey* is persuasive in this case, if not controlling. Meritt was a counselor at Klamath Alcohol and Drug Abuse, Inc. (KADA), a non-profit corporation that contracted with Klamath County and Indian Health Services to provide treatment and support to recovering addicts. *Merritt*, 827 F.2d at 1369. Merritt was fired after the defendants issued a report that conditioned further funding of KADA on the requirement that Merritt be terminated. *Id.* at 1370. Merritt sued for deprivation of liberty and property under the Due Process Clause.

The fact that KADA, rather than the government, terminated Merritt was of no legal significance:

> "That KADA and not the government officials themselves terminated Merritt's employment does not change the nature of his protected property interest.  Liability under 42 U.S.C. § 1983 attaches to any person who, under color of state law, "subjects or causes to be subjected" any person to a deprivation of protected rights. In *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978), this court noted that "the requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional   injury." *Id.* at   743-44; *see   also Arnold   v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).
>
> [ . . . .]
>
> It is clear on the facts before us that Merritt was the actual and intended victim of the agents' coercive dealings with KADA.

Page 38 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

Merritt therefore states a claim under section 1983 that he was deprived of his property interest in continued employment when the state and federal agents intentionally coerced KADA to fire him."

*Merritt*, 827 F.2d at 1372 (9th Cir. 1987).[13]

It is clear that Lohner knew or should have known that a call from the Chief of Police suggesting that New Directions would not have hired Addison if it had checked "local records," pointing New Directions to a "fact file" replete with traffic warning listed as "tickets" and not including the fact that the stalking citation had expires, describing Addison as having "mood swings," expressing concern over his working with "vulnerable populations," and discussing the Caution Flag, would "set[] in motion a series of acts by others" that would "cause others to inflict the constitutional injury." *Id.*

And, Addison was not provided adequate process. Lohner did not offer Addison an opportunity to clear his name concerning the stalking citation or any of the other issues Lohner addressed with New Directions. *Merritt*, 827 F.2d at 1372. Indeed, if Lohner's discovery responses are to be credited, he was unaware that the stalking citation had been dismissed and that, at the hearing on the citation, the purported victims testified that they did not feel threatened. (Ex. M; Ex. X, Lohner Dep. at 62:9-20; Addison Decl., ¶¶ 4-7.) Like the defendants in *Merritt*, Lohner's statements to New Directions were not random and Lohner easily could have predicted the injury that would result. *Merritt*, 827 F.2d at 1372.

---

[13] The evidentiary record in Addison's case indicates that, like KADA, New Directions is a government contractor – though with Baker County, rather than Baker City. (Ex. A, Selander Dep. at 8:2-23.)

Page 39 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

**C.**    **Substantive Due Process:  Addison Has Made A Prima Facie Showing Of A Liberty Interest In Not Being Stigmatized Or Blacklisted In His Occupation By Government Officials**

There is a due process liberty interest "to choose one's field of private employment."  *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). The liberty interest in choosing one's field of private employment derives from the more general "interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustifiable label of infamy." *Stretten v. Wadsworth Veteran's Hospital*, 537 F.2d 361, 366 (9th Cir. 1976).  "One's liberty interest is implicated . . . when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" *Vanelli v. Reynolds Shool Dist. No. 7*, 667 F.2d 773, 777 n.5 (9th Cir. 1982) (quoting *Stretten*, 537 F.2d at 365). The government implicates a citizen's protectable liberty interests "when his or her '"good name, reputation, honor or integrity' is at stake.'" *Roth v. Veteran's Admin. of United States*, 856 F.2d 1401, 1411 (9th Cir. 1988).

The Ninth Circuit has held that accusations of dishonesty or moral turpitude clearly implicate a liberty interest. *Roth*, 856 F.2d at 1411 (quoting *Stretten*, 537 F.2d at 365); *see Heidt*, 2016 U.S. Dist. LEXIS 163996 at *31. To decide less clear-cut cases and delineate the scope of the liberty interest, the Ninth Circuit looks to the nature of the charge. *Roth*, 856 at 1411.[14]

---

[14] The Ninth Circuit cases appear to have departed from *Roth v. VA* in that subsequent panels of the Ninth Circuit started to say that accusations of dishonesty or moral turpitude are the <u>only</u> charges that can implicated a liberty interest. As far as Addison's counsel can tell, there has been no intervening Supreme Court opinion that would alter the relevant standard, and no Ninth Circuit case explaining why the more flexible approach of *Roth v. VA* should not persist. Indeed, it appears that the liberty interest is better defined by what it is not. As the Ninth Circuit noted in *Stretten*, commenting on the Supreme Court's holding in *Bd. Of Regents v. Roth*, 408 U.S. 564 (1972): "[T]his Court has

Page 40 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

"The Supreme Court has repeatedly recognized that "the government has a much freer hand in dealing 'with citizen employees than it does then it brings sovereign power to bear on citizens at large.'" *Heidt*, 2016 U.S. Dist. LEXIS 163996 at *27 (quoting *Naza v. Nelson*, 562 U.S. 134, 148 (2011)).

## 1.    Addison Has Demonstrated A Liberty Interest Sufficient To Survive Summary Judgment

For the sake of brevity (which might, at this point, be futile), Addison incorporates by reference the factual discussions concerning Lohner's statements to New Directions set forth above at pages 2-4 and 12-14. The claims in this case should proceed to the jury for several reasons. First, there are issues of fact concerning what Lohner and Marji Lind discussed during their conversations related to Addison, his employment and the "fact file."

Second, there is an issue of fact as to whether Lohner accused Addison of dishonesty. Lohner testified that he learned from his conversations with Lind that she had been unaware that Addison had worked at the *Record-Courier*. (Ex. X, Lohner Dep. at 132:15-133:2.) However, the résumé that Addison submitted to New Directions clearly indicates that he had worked there. (Ex. BB, Hendricks Dep. at 36:9-12; Ex. FF.) A reasonable jury could infer that Lohner charged Addison with being dishonest on his application.

Third, Lohner's purported discussion of the stalking incident and Caution Flag could be reasonably construed as an accusation of moral turpitude. *See Wellington v. Lane Cty.*, 460 F. App'x 690, 692 (9th Cir. 2011) (unpub. memorandum) (using "reasonably construed" language). The Ninth Circuit has held that stalking is a crime of

---

concluded that *Roth's* notion of liberty, while imprecise, distinguishes between a stigma of moral turpitude, which infringes the liberty interest, and a charge of incompetence or inability to get along with coworkers which does not."

Page 41 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

moral turpitude. *Latter-Singh v. Holder*, 668 F.3d 1159, 1162 (9th Cir. 2012) (stalking is a crime of moral turpitude).[15] Although Addison was not charged with criminal stalking, a rational jury could conclude that a discussion of stalking in the course of a discussion with the Chief of Police referred to criminal activity.

Further, even if the Court does not agree that Lohner accused Addison of dishonesty or moral turpitude, the Court should look to the "nature of the charge" that Lohner says he made against Addison and conclude that, at a minimum, there is an issue of fact as to whether it implicates Addison's liberty interest in his "good name, reputation, honor or integrity." *Roth*, 856 at 1411. If Lohner's testimony is to be credited, he informed two employers that Addison was an accused stalker who suffered from mood swings, and told New Directions that it should investigate Addison's "local records" further.

This was not an accusation of incompetence, which would not implicate the Due Process Clause. Rather, if Lohner's testimony is to be credited, the communications with New Directions were designed to prevent Addison from working with the sort of "vulnerable population" with which Lohner believes Addison should not work. (Ex. X, Lohner Decl. at 114:19-115:3, 134:22-135:16.) As a result of Lohner's communications, Addison now bears the stigma, in a small city, of having been terminated from the County's mental health provider. This is a stigma his Bachelor of Science in psychology, and his prior clinical experience in La Grande, will not overcome. *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981) (an actionable stigma is one that "seriously damages a person's reputation or significantly forecloses his freedom to take advantage of other employment opportunities.") Lohner's overreaching into the employment of a private-sector employee violated Addison's constitutionally-protected

---

[15] Undersigned counsel did not locate cases considering whether violation of Oregon's stalking statute is a crime of moral turpitude.  The *Latter-Singh* court construed the California Penal Code.

Page 42 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

liberty interests. *Heidt*, 2016 U.S. Dist. LEXIS 163996 at *27 (quoting *Naza v. Nelson*, 562 U.S. 134, 148 (2011) (government has less leeway when dealing with citizens at large).

Lohner has admitted that he will make the same phone call to Addison's employers in the event he applies to work with "vulnerable populations," which appears to include those in need of mental health care as well as school-age children. (Ex. X, Lohner Dep. at 133:3-23, 134:22-135:16.) This violates Addison's Due Process liberty interest. *See Enquist*, 478 F.3d at 997 (blacklisting "to prospective employers effectively excludes the blacklisted individual from his occupation" and therefore gives rise to a substantive due process claim).

**D.    Lohner Is Not Entitled To Qualified Immunity On The Due Process Claims**

*Federal Deposit Ins. Corp. v. Henderson*, discussed above, established Addison's property interest in his at-will/30-Day Work Plan arrangement. Government officials have been on notice since that case, decided in 1991, that interference with such an arrangement violates due process. Further, as *Merritt v. Mackey* reiterated in 1987, "[i]t is clearly established that state law or an independent source may create a property right in employment protected by the Due Process Clause." *Merritt*, 827 F.2d at 1373.

Further, it was established in this Circuit, at all times relevant to Addison's claims, that a private-sector employee "has a clearly established constitutional right to be free from unreasonable government interference with his private employment." *DiMartini v. Ferrin*, 889 F.2d 922, 927 (9th Cir. 1989), *amended*, 906 F.2d 465 (9th Cir. 1990), *cert. denied*, 111 S. Ct. 2796 (1991).

Page 43 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

**E.**    **Lohner Is Not Entitled To Qualified Immunity On Addison's Request For An Injunction Preventing Lohner From Calling Addison's Prospective Employers**

Lohner testified that he would call any future employer for which he believed that Addison was unsuited based on Lohner's view of Addison's demeanor. (Ex. X, Lohner Dep. at 133:3-23.) Addison seeks injunctive relief preventing Lohner from doing so, (ECF No. 43, SAC at 138-139, 143, 146-47, 157, Prayer ¶ E), in addition to seeking damages for Lohner's past deprivations of Addison's Due Process rights.

As a matter of law, Lohner may not raise qualified immunity in defense to a claim for injunctive relief. *Hayes v. Bolen*, 594 F. App'x 420, 421 (9th Cir. 2015) (unpublished memo.) (citing *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) (vacating district court's entry of summary judgment in favor of California prison official, and against prisoner on his First Amendment claim, on qualified immunity grounds)). Thus, at a minimum, Defendants' motion should be denied with respect to Addison's request for injunctive relief.

## IX.    THE BULK OF DEFENDANTS' PURPORTED EVIDENCE IS INADMISSIBLE, AND SOME OF IT WAS NOT PRODUCED IN DISCOVERY

In support of their Motion, Defendants offer the Declaration of Defendant Wyn Lohner.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Lohner's Declaration does not satisfy these requirements.

As set forth in more detail in the chart below, Addison objects to several statements in Lohner's Declaration on the grounds that the statements are hearsay or that Lohner lacks personal knowledge of the "facts" asserted. Addison also objects to the deposition testimony copied and pasted into Lohner's Declaration because the testimony is not

Page 44 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

authenticated and is misleading and inaccurate. Finally, Addison objects to Defendants' Exhibit 113 and asks it be stricken from the record as the document was never disclosed to Addison.

## A.    Lohner's Deposition Testimony

Addison objects to the deposition testimony purportedly copied into Lohner's Declaration because it (1) does not comply with Fed. R. Civ. P. 32, and (2) has not been authenticated. *See Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1051 (D. Or. 2010) ("When offered at summary judgment, deposition excerpts must identify the names of the deponent and the action and must include the reporter's certification that the deposition is a true record of the testimony of the deponent."); *Jacobson v. Schwarzenegger*, 650 F. Supp. 2d 1032, 1045 (C.D. Cal. 2009) ("in order to use the depositions on a motion for summary judgment, plaintiff is required to provide the Court with a transcript" as required by FRCP Rule 32(c)."). Without the certification, the testimony is also hearsay because it is an out of court statement offered to prove the truth of the matter asserted, namely what Lohner told Lind. *See* FRE 801(c).[16]

In addition, the deposition testimony in the first paragraph on page 4 of Lohner's Declaration is inaccurate and misleading. Addison's counsel located a majority of testimony in that paragraph at page 127, lines 4-24 of Lohner's deposition transcript. (Concurrently-filed Declaration of Kristen G. Hilton ("Hilton Decl."), ¶15; Ex. NN.) However, the last sentence of the paragraph in Lohner's Declaration, "but I was curious as to what type of a process they did use", is actually from two pages later in the transcript (page 129, lines 3-4) in response to a different question. (Ex. NN.) Counsel

---

[16] Addison does not object to the Court's consideration of the testimony copied into Lohner's Declaration so long as it is already in the record as part of Exhibit X to the Declaration of Clifford Davidson (ECF No. 53) and Exhibit OO to the concurrently-filed Declaration of Clifford Davidson, as that testimony has been properly authenticated.

Page 45 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

brought this discrepancy to Defendants' attention and gave Defendants an opportunity to correct the record. (*Id.*) Defendants never responded. (Hilton Decl., ¶ 15.)

## B.    Defendants Failed to Disclose Exhibit 113 and Have Not Authenticated It

Exhibit 113 was never produced to Addison. (Hilton Decl. ¶ 16.) It therefore is inadmissible. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (party must produce "a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses.") The failure to previously disclose Exhibit 113, as required by Rule 26, also justifies exclusion. Fed. R. Civ. P. Rule 37(c)(1) (when a party violates Rule 26 it "is  not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.") Counsel notified Defendants that Addison never received a copy of Exhibit 113 and asked that Defendants withdraw Exhibit 113 on those grounds. (Ex. N.) Defendants failed to respond or offer an explanation for their failure to produce this document, which is dated *before* Addison initiated this lawsuit. (Hilton Decl., ¶ 15.)  Accordingly, Addison requests that the Court strike Exhibit 113 from the record.

Even if Exhibit 113 had been provided to Addison during discovery, it is still inadmissible because Lohner does not authenticate it. "Authentication is a 'condition precedent to admissibility . . . .'" *Redwind v. W. Union, LLC*, No. 3:14-cv-01699-AC, 2016 U.S. Dist. LEXIS 57793, at *5 (D. Or. May 2, 2016) (internal citation omitted). "In order to lay the foundation for receipt of a document in evidence, the party offering the exhibit must provide the 'testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.' In other words, the affiant must state specific facts from which the court could infer the affiant could identify correctly the document and knows the attachment is a true and correct copy of the genuine document." *Blount v. Conn. Gen. Life Ins. Co.*, No. CV 01-1341-BR, 2002 U.S. Dist. LEXIS 25553, at *7-8 (D. Or. July 2, 2002), quoting *United*

Page 46 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

*States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). Here, Lohner states that "Exhibit 113, is a face sheet that was printed at the Baker City Police Department about another person on October 31, 2014" (Lohner Decl. at 8), but does not explain who printed it the document, how he knows it was printed at the Baker City Police Department on that date, or what familiarity he had / has with the software used to print the document. As a result, he has not established personal knowledge of this document and cannot authenticate it. Thus, it is appropriate to strike Exhibit 113 from the record on this basis, as well. *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) ("[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment.").

**C.    The Court Should Exclude Other Statements in Lohner's Declaration**

Lohner asserts that his declaration is "based on [his] personal knowledge of the facts contained herein." (Lohner Declaration at 2.) However, "[i]t is not sufficient for the declarant to state that he or she has personal knowledge of the facts stated. Rather, the declarant must state facts showing his or her connection to the matters stated, establishing the source of the information." *Brew v. City of Emeryville*, 138 F. Supp. 2d 1217, 1227 (N.D. Cal. 2001) (striking declaration offered in support of motion for summary judgment). A review of the statements in Lohner's declaration demonstrates that he lacks personal knowledge of many of the facts he asserts. In addition, Lohner's testimony (Lohner Decl. at 9-11) regarding what another police officer said to him and the traffic warnings or citations given by other police officers is hearsay. FRE 801(c). For ease of reference, the statements and corresponding objections are set forth in the following table.

Page 47 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

| STATEMENT IN LOHNER DECL. | OBJECTION |
|---|---|
| New Directions is a non-profit organization that serves Baker County with drug, alcohol, and gambling addictions services, as well as drug and alcohol residential treatment and prevention. In July of 2014, New Directions was granted the contract from Baker County to become the new Community Mental Health Program in Baker County. (Page 2, ¶ 3.) | Lohner lacks personal knowledge of these matters. FRE 602; *Schulz v. Visionary Props.*, No. 3:14-cv-01129-AC, 2015 U.S. Dist. LEXIS 160756, at *10-11 (D. Or. Dec. 1, 2015) ("The Ninth Circuit requires affidavits offered in support of summary judgment be based on personal knowledge" and a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). According to his declaration, Lohner is "the Chief of Police for the Police Department of Baker City, Oregon" and has been "employed by Baker City as a police officer since 1999"; he is not employed by New Directions or Baker County. |
| . . . and any decision that New Directions has made concerning Brian Addison were made without any input from me. (Page 7, ¶ 1.) | Lohner lacks personal knowledge of the reason(s) for any decision that New Directions has made concerning Brian Addison. FRE 602. |

Page 48 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

| STATEMENT IN LOHNER DECL. | OBJECTION |
|---|---|
| During those depositions, New Directions produced a copy of the documents that had been provided to New Directions at the Baker County Sheriff's Office on November 14, 2014. Attached as Exhibit I 01, is a true and correct copy of those documents that New Directions produced during the depositions. The Bates-stamps located at the bottom of each page in the right-hand corner has the stamp ND. This was used by New Directions to show that the documents came from New Directions. (Page 7, ¶ 2.) | Lohner lacks personal knowledge of any documents that may have been produced by New Directions, including where New Directions obtained the document and when.   FRE 602.   Lohner also lacks personal knowledge of the bates-label used by New Directions.<br><br>Because    Lohner    lacks    personal knowledge of Exhibit 101, the document is not    properly    authenticated.    FRE 901(b)(1); *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970). |
| This date reflects the date that the documents were printed at the Baker County Sheriff's Office. (Page 7, ¶ 3.) | Lohner lacks personal knowledge of this matter.  FRE 602.  There is no evidence that he obtained the documents, and he does not work at the Baker County Sheriff's Office. |
| This means that the date the document was printed by the Baker County Sheriff's Office was Friday, November 14, 2014. (Page 7, ¶ 4.) | Lohner lacks personal knowledge of this matter.  FRE 602.  There is no evidence that he obtained the documents, and he does not work at the Baker County Sheriff's Office. |

Page 49 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ

| STATEMENT IN LOHNER DECL. | OBJECTION |
|---|---|
| This address is the address and phone number of the agency that prints the document.<br>(Page 8, ¶ 1.) | Lohner lacks personal knowledge of this matter.  FRE 602.  He did not create or maintain the software that generates such documents. |
| . . . no one from the Baker City Police Department provided Exhibit 101 to New Directions<br>(Page 8, ¶ 2.) | Lohner lacks personal knowledge of this matter.  FRE 602. |

## X.   CONCLUSION

Issues of fact preclude summary judgment and immunity of any sort.  Defendants' motion should be denied.

Dated this 24th day of March, 2017.

SUSSMAN SHANK LLP

By   /s/ Clifford S. Davidson
    Clifford S. Davidson, OSB No. 125378
    Kristen G. Hilton, OSB No. 151950
    Attorneys for Plaintiff Brian Addison

Page 50 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MSJ